IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| Stevie Jackson (B-63752), | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 15 C 50071 |
| v. | ) | |
| | ) | Judge Frederick J. Kapala |
| Mr. Enloe, et al., | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff's motion to amend his complaint [30] is granted. The Clerk is directed to file Plaintiff's proposed amended complaint (Attachment 1 of Document 30) as Plaintiff's amended complaint. The Court further directs the Clerk of Court to: (1) dismiss newly-named Defendants Correctional Officer Kepler and Mr. Zadlo; (2) issue summonses for service of the amended complaint on the newly-added Defendants (Miller, Ditzier, Mitchelle, Winters, Fisher, Smith, Coffy, Grafton, Granger, Hagler, Chavez, Hernandez, Johnson and Ms. King) by the U.S. Marshal and (3) send Plaintiff fourteen blank USM-285 service forms, and a copy of this order. The Court advises Plaintiff that a completed USM-285 form is required for each newly-named Defendant. The U.S. Marshal will not attempt service on a Defendant unless and until the required forms are received. The U.S. Marshal is appointed to serve the Defendants. Plaintiff's "motion to be told why Plaintiff's complaint now has a magistrate judge" [29] is granted. Per Judge Kapala's standing order, "All pretrial matters are referred to the Magistrate Judge, including the initial status conference, discovery, scheduling of motions, and settlement conferences."

**STATEMENT**

Plaintiff Stevie Jackson, previously an inmate at Dixon Correctional Center, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was allowed to proceed on his allegations that he was the victim of excessive force and retaliation at Dixon Correctional Center against seven Defendants. Plaintiff now seeks to file an amended complaint, adding multiple newly-named Defendants and additional claims.

Under 28 U.S.C. § 1915A(a), the Court is required to screen *pro se* prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Courts screen prisoner litigation claims in the same manner as ordinary Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan*

*v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

Plaintiff alleges that beginning in May 2014, Correctional Officers Smith, Skipworth, Coffy, and Miller would shake down his cell for no reason and take Plaintiff's purchased commissary items. During this same time, these correctional officers, in addition to Correctional Officer Winters and Lieutenant Newman, would send Plaintiff back to his unit without eating because Plaintiff moved slowly through the chow lines due to a previous gunshot wound to his right knee. In addition, Ms. Granger would pull Plaintiff from the medication line, resulting in Plaintiff not receiving his seizure and high blood pressure medication. At another unspecified time, Correctional Officers Skipworth, Kepler, and Smith and Lieutenant Newman took some commissary items from him (one pair of sweat shorts, one pair of sweatpants, one thermal top, 12 bags of coffee, bags of rice and two "watch caps").

In July 2014, Plaintiff informed unknown officers that another inmate, Washington, was being aggressive to him. These unknown officers gave Washington a mop and Washington struck Plaintiff in the head with the mop. In addition, Plaintiff informed Counselor Grafton, Superintendent Eubanks, Dr. Chess, Correctional Officer Miller, Mr. Hagler and Mr. Wooley that Washington constantly made sexual advances toward Plaintiff and they refused to address the situation.

In November 2014, Lieutenant Newman and Correctional Smith came to Plaintiff's cell, made racial comments, and moved him to a different cell. Plaintiff alleges that two white inmates were moved into his cell and he was placed in a filthy cell along with inmate Bellmon. Plaintiff informed Correctional Officer Smith, Sergeant Fisher, Superintendent Eubanks and Warden Enloe that Bellmon physically assaulted him but they refused to move him to a different cell.

At some later point, Lieutenant Newman and Sergeant Fisher moved inmate Spencer into Plaintiff's cell even though they knew Spencer had a history of fighting with inmates. Plaintiff informed Sergeant Fisher, Lieutenant Newman, Mr. Hagler, Lieutenant Craft, and Lieutenant Chavez that Spencer took Plaintiff's bottom bunk and physically and sexually assaulted him but they refused to help Plaintiff.

In addition, Correctional Officers Skipworth, Winters and Smith would write false

disciplinary reports about Plaintiff knowing that their supervisors, Lieutenants Craft and Chavez, would hear the report and falsely find that Plaintiff pled guilty to the false charges. Mr. Hagler and Counselor Hernandez also attended the hearings and they failed to allow Plaintiff to address the false charges.

On February 21, 2015, Lieutenant Newman, Correctional Officer Skipworth, Sergeant Harris and two other officers came to Plaintiff's cell and physically assaulted him. The attack continued after Plaintiff was taken to the segregation wing, at which time Lieutenant Newman stuck a pen in Plaintiff's anal cavity and told Plaintiff "this is what a real rape looks like," because Plaintiff had previously called a prison rape elimination hotline on him. After the attack, Plaintiff was left in the cell, naked for several hours.

Plaintiff alleges that on February 27, 2015, he received a disciplinary hearing in which he was not allowed to present any evidence or witnesses. On March 6, 2015, Correctional Officer Rosga and three other officers physically assaulted him. Plaintiff was told that the assault occurred because he had spoken to Superintendent Enloe earlier that day. The Defendants have also refused to feed Plaintiff on several occasions, refused him showers, and refused to provide him clean clothes until he recants his "story" about Lieutenant Newman. Plaintiff further alleges that he has been physically assaulted by the Defendants on several additional dates in retaliation for his grievances and complaints regarding the attacks on his person. Plaintiff further alleges that Warden Enloe and Superintendent Eubanks are aware of the repeated attacks and retaliation and have failed to correct the matter. He was also physically assaulted by Correctional Officers Coffee and Skipworth on March 12, 2015; Correctional Officers Mitchelle and Ditzier on 16 or 17, 2015 and March 23, 2015; and Lieutenant Newman on March 30, 2015.

In addition, on April 6, 2015, Correctional Officer Jackson and three other officers took Plaintiff's crutches from him even though he showed them a medical prescription for the crutches. Nurse King become involved in the dispute about the crutches and told the officers to remove the crutches. Lastly, Plaintiff alleges that Ms. Grafton would not process certain grievances and that Mr. Zadlo would also not file Plaintiff's grievances.

Plaintiff may proceed on his excessive force and retaliation claims against the named Defendants. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (the core requirement of an excessive force claim is that the correctional officer used force not "in a good-faith effort to maintain or restore disciple," but did so "maliciously and sadistically to cause harm"); *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (to prevail on a claim of retaliation, a plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the two). Plaintiff may also proceed on his conditions of confinement claim regarding the conditions of his cell in November 2014. In addition, Plaintiff may proceed on his claim of deliberate indifference against Officer Johnson and Ms. King for taking Plaintiff's needed crutches away from him. *See Hughes v. Joliet Correctional Center*, 931 F.2d 425, 427–28 (7th Cir. 1991) (staff could be liable for removing patient's crutches and leg braces and ordering bed moved away from the toilet so that he would have to walk, if their actions reflected a deliberate or reckless indifference to needless pain and suffering). Plaintiff's minimal allegations related to his disciplinary hearing still do not state a claim. Accordingly, that "claim" is dismissed without prejudice. Plaintiff's minimal allegations

related to Correctional Officers Correctional Officers Smith, Skipworth, Coffy, and Miller taking some commissary items once in May of 2014; and at some other unknown time, Correctional Officers Skipworth, Kepler, and Smith and Lieutenant Newman taking miscellaneous commissary items also do not state a claim.

Lastly, Plaintiff's claim that Ms. Grafton and Mr. Zadlo refused to process some of his grievances fails to state a claim. An inmate does not have a substantive due process right to a grievance procedure. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The only right attached to a grievance process is a procedural one, *i.e.*, an inmate must be allowed to exhaust his administrative remedies in order to pursue his right to access to the courts. *See Antonelli*, 81 F.3d at 1430; *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Here, Plaintiff only alleges his dissatisfaction with how his grievance was handled, not that he has been denied access to the courts. Thus, Plaintiff has failed to state a due process claim against those Defendants involved in the grievance process.

In light of the above claims going forward, the previously-existing and newly-named Defendants, except for Correctional Officer Kepler and Mr. Zadlo must respond to the amended complaint. Correctional Officer Kepler and Mr. Zadlo are dismissed without prejudice from this suit.

The Court directs the Clerk of Court to issue summonses for service of the amended complaint on the newly-named Defendants. The Clerk of Court is directed to mail Plaintiff twelve blank USM-285 (U.S. Marshals service) forms. The Court advises Plaintiff that a completed USM-285 form is required for each named Defendant. The U.S. Marshal will not attempt service on a Defendant unless and until the required form is received. Plaintiff must therefore complete and return a service form for each Defendant, and failure to do so may result in the dismissal of the unserved Defendant, as well as dismissal of this case for lack of prosecution.

The U.S. Marshals Service is appointed to serve Defendants. The Court directs the U.S. Marshal to make all reasonable efforts to serve Defendants. With respect to any former employee of the Dixon Correctional Center who can no longer be found at the work address provided by Plaintiff, the Illinois Department of Corrections and/or Dixon Correctional Center officials must furnish the U.S. Marshal with the Defendant's last-known address. The U.S. Marshal will use the information only for purposes of effectuating service or to show proof of service and any documentation of the address shall be retained only by the U.S. Marshal. Address information will not be maintained in the Court file nor disclosed by the U.S. Marshal, except as necessary to serve Defendants. The U.S. Marshal is authorized to send a request for waiver of service to Defendants in the manner prescribed by Federal Rule of Civil Procedure 4(d) before attempting personal service.

Date: June 21, 2016